UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**ROXANNE LA MARTINA,**

         **Plaintiff,**

    -vs-              12-CV-308A(Sr)

**BRIAN FISCHER, Individually and as
Commissioner of the State of New York
Department of Correctional Services;
DAVID M. UNGER, as Superintendent of the
Orleans Correctional Facility;
JEFFREY HOLLOR, Individually and as head cook;
ERNEST LOWERRE, Individually and as
Food Service Administrator II;
STATE OF NEW YORK; and
STATE OF NEW YORK DEPARTMENT OF
CORRECTIONAL SERVICES,**

         **Defendants.**
_____

## REPORT, RECOMMENDATION AND ORDER

    This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #7. Pending for determination is defendants' motion (Dkt. #6) pursuant to Rule 12(b) of the Federal Rules of Civil Procedure to dismiss certain claims from the case.

    For the reasons that follow, it is recommended that defendants' motion be granted.

## BACKGROUND

Plaintiff Roxanne La Martina brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983, alleging gender-based discrimination, creation of a hostile work environment, and other violations of her civil rights during the course of her employment as a cook at the Orleans Correctional Facility ("Orleans CF") maintained by the New York State Department of Correctional Services ("DOCS").[1] Dkt #1. Along with DOCS, plaintiff named as defendants the State of New York; Brian Fischer, sued individually and in his official capacity as Commissioner of DOCS; David M. Unger, sued in his official capacity as Superintendent of Orleans CF; Jeffrey Hollor, sued individually and in his official capacity as Head Cook at Orleans CF; and Ernest Lowerre, sued individually and in his official capacity as Food Service Administrator at Orleans CF. *See id.*

Plaintiff alleges that she began working at Orleans CF in August, 2004, as the only female cook. Dkt. #1, ¶ 19. She claims that Mr. Hollor, her supervisor, disciplined her and scrutinized her work more closely and frequently than he did with respect to male co-workers, directed other employees not to assist her, forced her to work less desirable units, and compelled her to perform tasks and to work overtime not expected of her co-workers. *Id.* at ¶¶ 21-22. Plaintiff also alleges that, in an effort to have her fired, Mr. Hollor falsely accused her of having sex with an inmate, prompting an

---

[1] By enactment of Chapter 62 of the Laws of 2011, the New York State Department of Correctional Services ("DOCS") was merged with the New York State Division of Parole to create the New York State Department of Corrections and Community Supervision ("DOCCS"). For continuity, since the events set forth in the complaint are alleged to have taken place prior to the April 1, 2011 effective date of Chapter 62, the Court will herein refer to the employer agency as "DOCS."

investigation by the State Inspector General's Office.  *Id.* at ¶ 24.  She complained to Mr. Lowerre (the food service administrator) and others about Mr. Hollor's actions, but her complaints were never properly addressed.  *Id.* at ¶ 25.

Plaintiff's last day of work at Orleans CF was January 4, 2007.  She claims she was removed from work by her physician as of that date due to stress and other injuries suffered as the result of harassment in the workplace.  *Id.* at ¶¶ 20, 26.  Plaintiff was terminated from her employment at Orleans CF effective January 12, 2008, having been absent from work for more than one cumulative year.  *Id.* at ¶ 20.  She subsequently received a favorable determination on her claim for workers compensation benefits following a hearing before the New York State Workers Compensation Board.  *Id.*

As set forth in the complaint, on February 12, 2007 plaintiff filed an administrative charge with the United States Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("NYSDHR").  *Id.* at ¶ 14.  On August 2, 2010, the EEOC issued a determination finding that the evidence gathered during its investigation substantiated plaintiff's charge of discrimination. *Id.* at ¶¶ 15-16.  Following unsuccessful efforts at conciliation, the United States Department of Justice, Civil Rights Division, issued a Notice of Right to Sue letter dated January 23, 2012, advising plaintiff of her right to bring a civil action within 90 days.  *Id.* at ¶¶ 17-18.

Plaintiff filed the complaint in this action on April 12, 2012, against the State of New York, DOCS, Commissioner Fischer, Superintendent Unger, Head Cook Hollor,

and Food Service Administrator Lowerre, alleging in general terms "that the failure of defendants to act appropriately to end the discriminatory conditions of Plaintiff's employment [was] unlawful and violative of Plaintiff's rights under Title VII, 42 U.S.C. Section 1983, and the Constitution and laws of the United States." Dkt. #1, p. 8. The complaint seeks declaratory and injunctive relief, reinstatement, front- and back-pay, compensatory and punitive damages, and attorney's fees.

In lieu of an answer, defendants filed a motion to dismiss based on the following grounds:

1. Plaintiff's Section 1983 claim is time-barred under the applicable three-year statute of limitations;

2. If not time-barred, plaintiff's Section 1983 claims against the State, DOCS, and the individual defendants in their official capacities are barred by sovereign immunity and the Eleventh Amendment;

3. Failure to state a claim upon which relief can be granted under Title VII against the individual defendants;

4. Failure to state a claim upon which relief can be granted against the State of New York; and,

5. Failure to state a claim for punitive damages against the State and DOCS. Dkt. #4.

Plaintiff's attorney, W. James Schwan, submitted a responding affirmation (Dkt. #9) stating that plaintiff has conceded grounds 1, 2 and 5 of defendants' motion – *i.e.*, that her claims under Section 1983 and her punitive damages claim against the State of New York and DOCS should be dismissed from the case. In response to grounds 3

and 4 of defendants' motion, plaintiff contends that individuals sued in their official supervisory capacity may be liable under Title VII, and that she properly sued the State of New York as her employer.

## DISCUSSION

**Standards for Motion to Dismiss**

In considering a motion to dismiss brought under Rule 12, the court "must accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff." *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (citing *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006)). To withstand the motion, the plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted)).

As indicated above, plaintiff's concession to grounds 1, 2 and 5 of defendants' motion leaves only the two following issues for consideration under these standards: (1) whether plaintiff may maintain a plausible claim for relief under Title VII against the individual defendants; and (2) whether the State of New York is the plaintiff's "employer" for the purpose of imposing liability for employment discrimination under Title VII.

**Individual Liability Under Title VII**

It is well settled in the Second Circuit that "Title VII does not impose liability on individuals …." *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012); *see also Speigel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) ("[T]he remedial provisions of Title VII ... do not provide for individual liability."). This is true even if those individuals exercised "supervisory control" over the plaintiff. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *see also Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) ("[U]nder Title VII individual supervisors are not subject to liability."); *Cayemittes v. City of New York Dept. of Housing Preservation and Development*, 2012 WL 406915, at *2 (S.D.N.Y. Feb. 9, 2012) ("Title VII does not provide for personal liability, even for claims against individuals in a supervisory role.").

Accordingly, because plaintiff cannot state a plausible claim for relief under Title VII against individuals, and because plaintiff has conceded to dismissal of her Section 1983 claims, it is recommended that plaintiff's complaint against individual defendants Fisher, Unger, Hollor, and Lowerre be dismissed in its entirety.

**State of New York as Plaintiff's Employer Under Title VII**

Defendants' motion also seeks dismissal of the complaint as against the State of New York. According to defendants, since plaintiff was employed by DOCS – not by the State – there is no basis for imposing Title VII liability on the State.

Title VII makes it "an unlawful employment practice for an *employer* ... to discriminate against any individual with respect to h[er] compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a) (emphasis supplied). "Consequently, the existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. New York State Educ. Dept.*, 460 F.3d 361, 370 (2d Cir. 2006), *cert. denied*, 554 U.S. 917 (2008).

As noted by the Second Circuit in *Gulino*, because the statutory definitions of "employer" and "employee" are not particularly helpful in determining the existence of an employment relationship for Title VII liability purposes, the courts have looked to a number of factors for guidance. *Gulino*, 460 F.3d at 370-71 (quoting *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448 (2003) (applying federal common-law of agency to definition of "employee" under ADA); also citing *Comty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 751–52 (1989) (non-exhaustive, thirteen-factor list of considerations for determining whether a "hired party" is an "employee," developed from federal case law and Restatement (Second) of Agency)). The inquiry ultimately espoused by the circuit court in *Gulino* focuses on application of "traditional indicators of employment under the common law of agency … ," including whether the entity sought to be held subject to Title VII liability "hired and compensated" the plaintiff and exercised a "direct, obvious, and concrete" level of control over the plaintiff's day-to-day activities. *Gulino*, 460 F.3d at 379.

The pleadings and materials submitted for consideration on the present motion shed very little light on this matter. In her complaint, plaintiff alleges only that she "is a former employee of the State of New York Department of Correctional Services" (Dkt.

#1, ¶ 5; *see also* Dkt. # 9 (Schwan Aff.), ¶ 9 ("As is set forth in the Complaint, the plaintiff was employed with the New York State Department of Correctional Services and Community Services.")); that the State is "a government and a public employer …" (Dkt. #1, ¶¶ 6, 12); and, that DOCS is "an agency of the State of New York responsible for the care, confinement, and rehabilitation of inmates at some sixty one (61) correctional facilities funded by the State of New York" (*id.* at ¶ 13). Notably, plaintiff does not allege in her complaint that the State is her employer within the meaning of Title VII, or that the State itself was directly involved in or responsible for any discriminatory conduct or any other adverse action involving plaintiff's employment with DOCS.

In his responding affirmation, plaintiff's counsel alludes to the fact that the collective bargaining agreement governing the terms and conditions of plaintiff's employment at DOCS was negotiated and entered by and between plaintiff's union and the State of New York. *See* Dkt. #9, ¶ 10. Counsel further states that the State paid plaintiff's wages, and that the State and DOCS have joint responsibility for hiring and firing DOCS employees. *Id.* at 13. When deciding a motion to dismiss, however, the court's review "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *see also Avgerinos v. Palmyra-Macedon Central School Dist.*, 690 F. Supp. 2d 115, 123 (W.D.N.Y. 2010) ("[C]ourts have complete discretion to determine whether or not to accept submission of any material beyond the pleadings

offered in conjunction with a motion to dismiss, and thus complete discretion in determining whether to convert the motion to one for summary judgment."). In the absence of any allegations in the complaint referencing the State's involvement in collective bargaining, payment of wages, and hiring and firing of DOCS employees, or any other information to justify acceptance of counsel's affirmations in this regard as well-pleaded facts for the purposes of the present motion, these matters must be considered as outside the pleadings, and the Court declines in the exercise of its discretion to convert the motion into a motion for summary judgment as contemplated by Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

      For defendants' part, although no determinative authority has been cited (or revealed by the Court's independent research) regarding the precise question as to whether the State of New York is the employer of DOCS personnel for the purposes of Title VII liability, cases decided within the Second Circuit have held that the State is not a proper defendant in Title VII actions brought by employees of various other state agencies. *See Farrell v. State of New York*, 946 F. Supp. 185, 191 (N.D.N.Y. 1996) (dismissing State of New York as defendant in Title VII action brought by state trooper, who was employed by the New York State Division of State Police); *Palmer v. New York State Office of Court Admin.*, 2010 WL 3724115, at *4 n. 2 (N.D.N.Y. Sept. 15, 2010) (dismissing State of New York as defendant in Title VII action brought by a court reporter, who was employed by the New York State Office of Court Administration).

*See also Easterling v. State of Connecticut*, 783 F. Supp. 2d 323, 334 (D.Conn. 2011) ("Although the [Connecticut Department of Correction], the State Police, and the Department of Public Safety are all part of the Connecticut state government, each agency is responsible for its own hiring and fairly characterized as a separate 'employer' and 'respondent,' as those terms are defined in Title VII.").

In light of these analogous holdings, and considering the absence of any facts asserted within the four corners of the complaint to establish the existence of the employer-employee relationship required under 42 U.S.C. § 2000e–2(a), the Court finds that plaintiff has failed to plead enough facts to state a facially plausible claim for relief under Title VII against the State of New York.

## **CONCLUSION**

For the foregoing reasons, it is recommended that defendants' motion (Dkt. #6) be GRANTED dismissing plaintiff's claims against the State of New York, and against individual defendants Brian Fisher, David M. Unger, Jeffrey Hollor, and Ernest Lowerre, in their entirety.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report,

Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). <u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order</u>. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

DATED:    Buffalo, New York
              March 19, 2013

   *s/ H. Kenneth Schroeder, Jr.*
H. KENNETH SCHROEDER, JR.
United States Magistrate Judge